IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Erika Pomerantz, ) | C/A NO. 4:22-cv-01437-JD-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER AND OPINION** |
| ) | |
| Coastal Carolina University, Peter Paquette, ) | |
| Angel Onley-Livingston, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the Court with the Report and Recommendation ("Report and Recommendation" or "Report") of United States Magistrate Judge Thomas E. Rogers, III, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) of the District of South Carolina.[1] (DE 9.) Plaintiff Erika Pomerantz ("Plaintiff" or "Pomerantz") filed this action against Coastal Carolina University ("CCU"), Peter Paquette ("Paquette"), and Angel Onley-Livingston ("Onley-Livingston"), alleging causes of action for Race Discrimination, Retaliation, and Hostile Work Environment in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e), et seq., and 42 U.S.C. § 1981, as well as state law causes of action for Slander and Negligent Supervision. (DE 1-1.)

On May 11, 2022, Defendants filed a Motion to Dismiss under Rule 12(b)(6), Fed. R. Civ. P., seeking dismissal of Plaintiff's Hostile Work Environment, Slander, and Negligent Supervision causes of action. (DE 5.) On May 22, 2022, Plaintiff responded to Defendants' Motion to Dismiss.

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

(DE 6.) On December 16, 2022, the magistrate judge issued the Report, recommending this Court grant Defendants' Motion to Dismiss as to Plaintiff's Negligent Supervision and Slander claim against Paquette because Plaintiff's Complaint lacks specificity against Paquette, and her Negligent Supervision claim is barred by the exclusivity provisions of the South Carolina Worker's Compensation Act (SCWCA). (DE 9); see S.C. Code Ann. § 42-1-540. However, the Report recommends denying the motion as to Plaintiff's Hostile Work Environment and Slander claims against Onley-Livingston. (DE 9.) Accordingly, for the reasons stated below, the Court adopts the Report and grants Defendants' Motion to Dismiss, as provided herein.

## BACKGROUND

The Report and Recommendation sets forth the relevant facts and legal standards, which the Court incorporates herein without a complete recitation. However, as a brief background relating to the objections raised by Plaintiff, the Court provides this summary.

"Plaintiff is multicultural Asian, Latina, and Jamaican." (DE 1-1, ¶ 25.) She is a Licensed Professional Counselor and a Licensed Addictions Counselor in South Carolina with a master's degree in Professional Counseling. (Id. at ¶ 26.) CCU hired Plaintiff on September 16, 2017. (Id. at ¶ 27.) Approximately a year and a half after Plaintiff's hire, CCU hired a diverse, multicultural counselor. (Id. at ¶¶ 29-30, 33.) On April 1, 2019, CCU hired Sitonja Valenzuela, who was unlicensed, less qualified, and less experienced than Plaintiff but paid her more money per year than Plaintiff. (Id. at ¶ 33.) On April 15, 2019, Plaintiff questioned why CCU hired a less experienced person at a higher pay rate than Plaintiff. (Id. at ¶ 34.) Plaintiff was informed that the hire was due to CCU's initiative for diversity, and Plaintiff was not "multicultural enough and presented as white and therefore was not paid more." (Id.) Plaintiff informed Jennie Cassidy ("Cassidy") that she was being discriminated against based on race and wanted the issue addressed.

(Id. at ¶ 35.) Cassidy stated she would take Plaintiff's complaint to Dr. Debbie Conner. (Id.) During each bi-weekly supervision meeting from April to May 2019, Plaintiff addressed her race discrimination claim. (Id. at ¶ 36.) Cassidy continually informed Plaintiff that she would address it with Dr. Conner and that there may be a chance for a salary inquiry in October of 2019. (Id.)

On August 8, 2019, Plaintiff met with Kimberly Sherfesse, Associate Vice President for Human Resources/EEO Officer ("Sherfesse"), and made a complaint of race discrimination specifically regarding discrimination based on race and a pay discrepancy of a less qualified employee making more money due to being "multicultural." (Id. at ¶ 40.) Plaintiff included in the complaint that she was informed she was not "multicultural enough" to be paid at the higher rate. (Id.) During the meeting, Plaintiff also informed Sherfesse that she protested the job posting for the new counselor and that she had suffered retaliation due to her complaints. (Id. at ¶¶ 41-42.) On August 18, 2019, Plaintiff sent an email requesting that Sherfesee follow up with her when the review of her complaints was complete. (Id. at ¶ 44.) On August 23, 2019, Plaintiff received an email from Sherfesee stating that she had met with Dr. Conner and Dr. Paquette, Associate Vice President for Student Affairs/Dean of Students, and they were reviewing her complaints. (Id. at ¶ 45.)

Notwithstanding Plaintiff's complaint, on November 12, 2019, Dr. Paquette requested that Plaintiff meet with Sperduto[2] to address any unresolved issues in the office. (Id. at ¶ 59.) On November 14, 2019, Dr. Paquette and Dr. Conner held a meeting with Plaintiff to discuss other issues that came to light regarding Plaintiff during the Title IX investigation, including bullying, failing to maintain a harmonious working relationship, potential breach of confidentiality, and potential inappropriate referrals. (Id. at ¶ 60.) The complaint states, "they further informed the

---

[2] It is not clear from the allegations what position Sperduto held at CCU.

Plaintiff the discipline was not retaliation for her complaints[.]" (Id. at ¶ 60.) However, there are no specific allegations regarding any discipline resulting from this meeting.

Plaintiff contends that the Defendants published false statements regarding Plaintiff's work performance and issues regarding policy violations. (DE 1-1, ¶ 172.) Furthermore, Plaintiff alleges that:

> The purpose of the discipline of the Plaintiff was to strike fear into her heart and to ensure that she would stop challenging the discrimination of others. The Slander of the Plaintiff was an attempt to make her stop complaining about the work environment and ensure a certain type of behavior that they felt was conducive to the work environment. However, the work environment was hostile[,] with no discipline being handed to those [who] perpetrated it without repercussions. Many employees failed and refused to do the requirements of their positions, violated policies and procedure[s], and failed and refused to comply with normal decorum and common decency toward the Plaintiff. The Defendant was aware of these issues and failed and refused to follow their own policies and procedures by investigating. The Plaintiff was disciplined for issues that were pretextual but held to a higher standard where others were not.

(DE 1-1, ¶ 173.)

In addition, Plaintiff alleges that CCU negligently supervised its employees, Paquette and Onley-Livingston, and that it was fully aware of the retaliation and hostile work environment that was occurring regarding Plaintiff and failed and refused to change or correct the behavior of its employee, allowing severe extreme emotional distress to be inflicted upon the Plaintiff without repercussions. (Id. at ¶¶ 179-180.) Plaintiff further alleges that:

> Onley-Livingston was allowed to randomly change the Plaintiff's terms and conditions, failed to force others to perform their positions and treat the Plaintiff with the respect of her education and position, failed and refused to correct [the] behavior of other employees, posted threatening messages to Facebook that were open to the public, failed and refused to control the work environment and inflicted severe emotional distress upon the Plaintiff without repercussions because CCU refused to properly supervise its employees.
>
> Paquette was permitted without hinderance to yell and scream at the Plaintiff that discipline was not retaliation[,] and his actions were not hostile work environment despite being aggressive and combative. Paquette's handling of the discipline was inappropriate and a violation of the policies and procedures of CCU. CCU was

aware of Paquette's actions but failed and refused to correct the behavior in compliance with policies and procedures.

(Id. at ¶¶ 181-182.)

## DISCUSSION

On December 29, 2022, Plaintiff filed an objection to the Report.  (DE 10.)  However, to be actionable, objections to a report and recommendation must be specific.  Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge.  See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir. 1984).  "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (2005) (citing Thomas v. Arn, 474 U.S. 140 (1985)).  "A general objection to the entirety of the magistrate judge's report is tantamount to a failure to object."  Tyler v. Wates, 84 F. App'x 289, 290 (4th Cir. 2003).  "Likewise, a mere restatement of the arguments raised in the summary judgment filings does not constitute an 'objection' for the purposes of district court review."  Nichols v. Colvin, 100 F. Supp. 3d 487 (E.D. Va. 2015).  In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation.  See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Upon review, the Court finds that Plaintiff has raised two objections to the Report:  1) the Report failed to consider the false statements made by Paquette regarding Plaintiff's performance to satisfy her Slander cause of action, and 2) Onley-Livingston and Paquette's actions were intentional and not accidental, and therefore, Plaintiff's Negligent Supervision claim does not fall under the exclusivity provision of the SCWCA.  (DE 10, pp. 4-5.)  As to Plaintiff's workers'

compensation non-exclusivity objection, Plaintiff's intentional tort defense is misplaced. Notwithstanding the fact that Plaintiff has failed to identify any facts to support her claim that her cause of action for negligent supervision is an intentional act of the employer, under South Carolina law, the SCWCA is the exclusive remedy for claims arising out of and in the course of employment. See Sabb v. S.C. State Univ., 350 S.C. 416, 422, 567 S.E.2d 231, 234 (2002). The Act provides:

> The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death.

S.C. Code. Ann. § 42–1–540. This provision is formally known as the exclusivity provision. The South Carolina Supreme Court has broadly opined that the exclusivity provision "precludes tort recovery against employers." Glass v. Dow Chem. Co., 325 S.C. 198, 482 S.E.2d 49, 50 n.1 (S.C. 1997)).[3] Consequently, South Carolina courts considering the exclusivity provision have found that the Act provides the exclusive remedy for alleged failure of an employer to exercise reasonable care in selection, retention, and supervision of employees. See Sabb, 567 S.E.2d at 234 (citing Dickert v. Metro. Life Ins. Co., 428) (claim of negligence for failure to exercise reasonable care in selection, retention, and supervision of co-employee is covered by the Act). A court in this District has even found that the Act provides the exclusive remedy for negligent supervision claims even

---

[3] "The only exceptions to the exclusivity provisions are: (1) where the injury results from the act of a subcontractor who is not the injured person's direct employer; (2) where the injury is not accidental but rather results from the intentional act of the employer or its alter ego; (3) where the tort is slander and the injury is to reputation; or (4) where the Act specifically excludes certain occupations." Cason v. Duke Energy Corp., 348 S.C. 544, 548, 560 S.E.2d 891, 893 n.2 (2002) (internal citations omitted). The alter ego exception applies to "dominant corporate owners and officers" and does not encompass "supervisory employees." Dickert v. Metro. Life Ins. Co., 311 S.C. 218, 221, 428 S.E.2d 700, 701 (1993), as modified on reh'g (Apr. 7, 1993). None of these exceptions apply to the instant case.

where the defendant's conduct is alleged to have been willful, wanton, and reckless. Mack v. Detyens Shipyards, Inc., No. CV 2:16-1323-RMG-BM, 2017 WL 9250332, at *8 (D.S.C. Nov. 3, 2017) report and recommendation adopted, No. CV 2:16-1323-RMG, 2017 WL 5952692 (D.S.C. Nov. 30, 2017). Applying these principles to this case, Plaintiff's objection is overruled.

As to Plaintiff's Paquette Slander objection, Plaintiff argues that on December 5, 2019, Plaintiff participated in a meeting with Dr. Paquette and Dr. Carter to follow up on the Notice of Written Reprimand for Bullying, Failure to Maintain a Harmonious Work Environment, which is in accordance with Human Resources Policy FAST 222, Disciplinary Action and Termination for Cause, Potential Breach of confidentiality, and the potential of inappropriate referrals. Plaintiff contends that:

> This meeting was retaliatory, [and] bullying, and further created a hostile work environment and made false accusations that are unable to be appealed. During this meeting, the Plaintiff was asked what would be done to remedy the hostile work environment. . . . This meeting accused the Plaintiff of bullying [,] which [is] blatantly false, accused the Plaintiff of inappropriate referrals [,] which was also false. Paquette and Carter made these statements in the reprimand [,] which they signed off on. On October 8, 2020, the Defendants, Peter L. Paquette, Interim VP for Student Affairs [,] and the Defendant, Angel Onley-Livingston, Director of Counseling Services[,] presented a Notice of Written Reprimand & Associated Corrective Action Needed to the Plaintiff. This presented false information regarding the Plaintiff's performance.

(DE 10, p. 5, DE 1-1, ¶ 63.) As the Report correctly states, a party asserting a claim of defamation must prove the following elements: "(1) a false and defamatory statement was made; (2) the unprivileged publication of the statement to a third party; (3) the publisher was at fault; and (4) either the statement was actionable irrespective of harm or the publication of the statement caused special harm." Williams v. Lancaster Cty. Sch. Dist., 369 S.C. 293, 302–03, 631 S.E.2d 286, 292 (Ct. App. 2006). Although Plaintiff's Complaint alleges a false statement was made, it does not allege Paquette made it, rather the Complaint alleges she signed off on it. Moreover, the Complaint

does not allege an unprivileged publication by Paquette to a third party. Given these deficiencies, Plaintiff's objection is overruled.

Accordingly, after a thorough review of the Report and Recommendation and the record in this case, the Court adopts the Report (DE 9) as modified herein and incorporates it by reference.

It is, therefore, **ORDERED** that Defendants' Motion to Dismiss (DE 5) is granted as to Plaintiff's Negligent Supervision and Slander claims against Paquette. However, Defendants' motion is denied as to Plaintiff's Hostile Work Environment and Slander claims against Onley-Livingston.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
February 10, 2023